[Civ. No. 26329.   Second Dist., Div. Four.   Feb. 6, 1963.]

RICHARD H. CLINTON et al., Cross-complainants and Appellants, v. 4911 VAN NUYS LTD. et al., Cross-defendants and Respondents.

Richard H. Clinton, in pro. per., for Cross-complainants and Appellants.

Gray & Guy, William R. Pippin, Frank E. Gray and Enrico J. Verga for Cross-defendants and Respondents.

BURKE, P. J.—This is an appeal by Richard H. Clinton ("Clinton") and Joan F. Clinton from a judgment rendered against them as cross-complainants and in favor of cross-defendants 4911 Van Nuys Building, a limited partnership, Van-River, Inc., a California corporation, George A. Cordingly, Sr., president of Van-River, Inc. (collectively referred to herein as "Van Nuys"), Holland and Card House Movers,

J. C. Holland and O. F. Card (collectively referred to herein as "Holland"). The court adjudged that cross-complainants take nothing by reason of their cross-complaint and that cross-defendants have judgment for their costs of action and that in addition Holland have judgment against cross-complainants for the sum of $300. All other parties to the complaint and cross-complaints have been dismissed.

The court made detailed findings of fact as follows: In August 1957 Van Nuys acquired certain improved real property from Leetate Smith. As a part of the escrow for the purchase of the property Van Nuys gave Smith the privilege of removing the existing house and garage at his own cost, provided that it be accomplished by October 1, 1957. On September 4, 1957, Smith sold his privilege to remove the buildings to Clinton for $2,000, $650 of which was paid in cash, the remainder in the form of a promissory note of $1,350, no part of which was ever paid. On September 18, 1957, Clinton entered into a written agreement with Holland to remove the buildings, which agreement called for the payment of $1,000 on or before September 25, 1957. Clinton failed and refused to pay the $1,000, which the court found was without justification. On September 24 Clinton, without justification, refused to allow Holland to continue performance of the contract to move the buildings. Holland performed labor and services for Clinton of the reasonable value of $300, no part of which has been paid.

The court further found that Clinton did not remove the buildings because he had no location to which he was legally entitled to remove them and because he had not secured the necessary permits authorizing the removal or transportation of the buildings.

Van Nuys gave Clinton an extension from September 30 to October 10 within which to move the house. By an agreement of September 30, 1957, the time within which to remove the garage was extended to a date 30 days after notice. Thereafter notices dated October 21, October 28, 1957, January 2 and January 21, 1958, were given by Van Nuys to Clinton to remove the buildings and advising him that if they were not moved they would be destroyed. The court found that Van Nuys made every reasonable effort to urge Clinton to take possession of and remove the buildings but that he did not do so. The house was destroyed by order of Van Nuys on January 25, 1958, and the garage on May 15, 1958. The court further found that on the respective dates that these buildings were

destroyed they had no monetary value whatever for the purpose of removal. It further found that no moneys or efforts were expended by Clinton in reliance upon any promise made by or on behalf of Van Nuys or Holland.

Clinton appears in propria persona. He filed an application for permission to file a typewritten brief which was first denied on April 11, 1962, and subsequently granted on July 3, 1962. After both the opening brief of Clinton and the brief of respondents Van Nuys were filed, Clinton then made formal application for augmentation of the record to include portions of his testimony at the trial. This court denied the application, believing it to be untimely. In his notice of appeal Clinton had specified with great particularity the various portions of the pleadings, exhibits, pretrial order, findings and judgment upon which he desired to rest his appeal. Having examined the record on appeal, including the exhibits, this court does not believe that any purpose would be served by any further augmentation of the record. At the time of oral argument Clinton, in responding to a question by the court, asserted that the documents in evidence must speak for themselves since the trial court enforced the parol evidence rule in refusing to permit him to testify as to the meaning of language used in the exhibits or as to his intent with respect thereto. He conceded that in view of this nothing would be added by supplementing the record before this court with a transcript of his testimony.

Although no brief has been filed by Holland, its counsel has notified this court in writing that he concurs in the brief of Van Nuys and adopts it on behalf of his clients.

On appeal Clinton asked this court to find that the trial court "erred in its findings of fact from testimony presented," and to remand the case to the trial court. ■ "The burden is on the appellant to show that the findings lack evidentiary support." (*Lewis* v. *Southern California Edison Co.*, 175 Cal.App.2d 293, 296 [345 P.2d 965].) ■ "It was incumbent upon appellant to produce the evidence here which he contends would have required a different finding; having failed to do so, he gets no relief. [Citing case.] A mere recital of grievances will not suffice." (*Seay* v. *Allen*, 134 Cal.App.2d 440, 444 [286 P.2d 392].)

A close examination of the clerk's transcript on appeal and of the exhibits supports the findings and judgment. Without detailing the various contentions of Clinton as to the matters in which he claims the evidence was insufficient to sustain

the findings, suffice it to say that nothing in the record before us supports these contentions. Neither do the contentions reach the main question as to the right of Van Nuys to demolish the buildings unless Clinton removed them from the premises on or before the deadline to which he had agreed, or on or before the various dates to which such deadline was extended by Van Nuys from time to time.

In its pretrial order the court set forth certain matters in issue. With respect to each of these matters the trial court specifically found against Clinton that: Van Nuys was the owner of the house and garage in question; Clinton had only a privilege to remove them from the premises; the buildings were not removed during the life of the privilege or any extension thereof and the privilege was terminated by Van Nuys; at the time the buildings were destroyed by order of Van Nuys it had the right to destroy them without liability to Clinton. The judgment which followed was amply supported by the findings of the trial court.

■ Clinton claims as significant to this controversy the fact that he caused the house to be severed from the land from its foundations and that it remained, cut in three pieces, on the rear of the premises in question. This, he asserts, had the effect of changing the character of the buildings from real property to personalty. None of these contentions reach the basic issue delineated above, however. Clinton had acquired a right to remove the buildings from the premises on or before a certain date. It is conceded that he did not remove them. Moving them from one portion of the lot to another did not alter the situation, and under the agreement had between Van Nuys and Clinton's predecessor in interest, if the buildings were not completely removed from the premises on or before the deadline clearly Van Nuys had the right to destroy them. This is what the court found actually occurred and we find no justification to disturb these findings and judgment.

Judgment affirmed.

Jefferson, J., and Bishop, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 3, 1963.

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.