108 So.2d 503 (1959)
FONTAINEBLEAU HOTEL CORP., a Florida corporation, Appellant,
v.
Saul H. KAPLAN, Appellee.
Saul H. KAPLAN, Appellant,
v.
FONTAINEBLEAU HOTEL CORP., a Florida corporation, Appellee.
Nos. 57-249, 57-380.
District Court of Appeal of Florida. Third District.
January 22, 1959.
Rehearing Denied February 13, 1959.
*504 Williams & Solomon and Richard P. Kenney, Miami, for appellant and cross-appellee.
Ward & Ward, Miami, for appellee and cross-appellant.
HORTON, Judge.
By order of court, these two appeals from the same final decree were consolidated.
This was a chancery action instituted by Kaplan for injunctive relief and damages growing out of the alleged breach by the Fontainebleau Hotel Corp., hereinafter referred to as the Hotel, of a lease agreement between the parties. Kaplan is a medical doctor, who on June 1, 1955, executed a lease with the Hotel and became a tenant for the operation of his office and medical clinic. The lease was to expire on October 31, 1959. The lease contained three pertinent provisions which we feel necessary for a determination of this appeal. Article V, Section D(1) provides:
"That the Lessee will use the premises only for the conduct therein and therefrom of the Lessee's profession of a doctor of medicine and for no other purpose whatsoever."
Article V, Section D(2) provides:
"* * * Lessee similarly agrees to be available or to have competent professional associates available, as aforesaid, for attendance upon workmen's compensation cases referred to his office by Lessor and in this connection Lessor agrees to refer and recommend to Lessee all such workmen's compensation cases as may arise by reason of injury sustained by employees of the Lessor in and about the Fontainebleau Hotel; * * *".
Article VIII, Section I, is as follows:
"The Lessor agrees to instruct its appropriate personnel that if guests inquire for the services of a physician without specifying or inquiring about a particular named physician, such guests will be referred to the Lessee or his professional associate then on duty."
Kaplan contended in his complaint, as he does in this court, that under the terms of the lease agreement he had the exclusive right to operate a medical office or clinic on the premises of the Hotel, and that this right had been breached by the Hotel in bringing upon the premises another doctor and having calls referred by its employees to this other doctor. The other doctor was made a party defendant to this suit in the court below but upon final hearing was dismissed from the action.
The Hotel contended that the lease agreement did not by its terms grant an exclusive right to Kaplan; that it had not breached the terms of the agreement hereinabove enumerated. Further, that Kaplan's services to the hotel guests and employees have been unsatisfactory and specifically that he had refused to answer calls referred to him. Testimony was taken before the chancellor, and upon the conclusion thereof, the chancellor found that the lease did not grant to Kaplan exclusive right to operate a medical office or clinic such as would prohibit the Hotel from leasing space to other doctors. He nevertheless found that deception had been practiced upon Kaplan by the Hotel by means of advertising and other media of the presence of another doctor in the hotel, all of which the chancellor concluded was a violation of Kaplan's rights under the lease. The chancellor concluded that there had been such a wilful and flagrant breach of the terms of the lease agreement as to justify an award of punitive damages. The decree further granted to Kaplan injunctive relief against the *505 Hotel from further violations of the terms of the lease agreement, and in addition, mandatorily required the Hotel to comply with the provisions of Articles V and VIII aforesaid, and to remove from the offices or premises of the other doctor any signs or writing indicating that another doctor was on the premises. The decree also enjoined the Hotel from allowing or having any signs or writings on the hotel premises which would convey to hotel employees or guests information that another doctor's office was located in the hotel. The final decree referred the matter to a special master in chancery for the purpose of taking testimony as to the amount of compensatory as well as punitive damages which should be assessed against the Hotel by reason of its breach of the terms of the lease agreement.
We will first direct our attention to the main contention in the case as to whether or not the lease provided for or should be construed as granting an exclusive right to the lessee, Kaplan.
Although the parties may have intended a result different from that which arose, nevertheless, we are not at liberty to read into the lease by implication a restrictive covenant not otherwise contained in the language of the instrument. See Parkleigh House, Inc. v. Wahl, Fla.App. 1957, 97 So.2d 714 and cases cited therein. The appellee relies heavily upon Belvedere Hotel Co. v. Williams, 137 Md. 665, 113 A. 335, 14 A.L.R. 622, as authority for the proposition that a restrictive covenant may be implied from the language used in the instrument of demise. The inapplicability of the Belvedere case is apparent from an examination of the language employed in the lease there under consideration. No such language or similar language was used in the lease agreement now under discussion, and the lease was not otherwise ambiguous so as to require an interpretation. It demised a certain space in the hotel to Kaplan for the conduct of a doctor's office. It is true that other convenants contained in the lease could be construed as showing an intention of the parties to grant an exclusive right; nevertheless, we conclude that the better rule, supported by competent authority, is that a restrictive covenant as to property retained by a lessor must be evidenced by a clearly expressed intention. 51 C.J.S. Landlord and Tenant § 238, p. 865; 130 A.L.R. 120.
We next consider the injunctive relief granted Kaplan. Since the lease has been construed as non-exclusive, we find no basis for the court's order mandatorily requiring the removal of the signs indicating the presence of another doctor in the hotel. His presence was not precluded by the lease; consequently information concerning his whereabouts could not be considered a breach of the lease.
The court also enjoined the Hotel's referral of general inquiries for medical attention to any doctor except Kaplan. The court found that the Hotel had violated this provision of the lease and concluded as a matter of law that Kaplan was entitled to damages. The proof of damages for such a violation could be extremely difficult as the doctor may never know of requests for medical attention which were referred elsewhere. Under such circumstances, equitable relief to prevent a recurrence of similar acts is justified as special conditions exist which make a purely legal remedy inadequate. The court's equitable powers were properly envoked to construe the provisions of the lease and we feel that the existing conditions warranted the award of injunctive relief.
The chancellor's conclusion that Kaplan was entitled to compensatory damages for the Hotel's referral of inquiries to other doctors is affirmed, but reversed as to the award of punitive damages. Generally, punitive damages are not recoverable for the breach of a contract. Although the chancellor found this violation to be wilful and flagrant, it does not appear that the acts complained of also constitute a tort *506 which is a necessary predicate to the award of punitive damages. Griffith v. Shamrock Village, Fla. 1957, 94 So.2d 854.
Accordingly, the decree is affirmed insofar as it construes the lease to be non-exclusive, as to the injunctive relief to prevent referral of general inquiries to others than Kaplan, and as to the award of compensatory damages. The decree is reversed insofar as it requires the removal of signs indicating the presence of another doctor and as to the award of punitive damages.
Affirmed in part and reversed in part.
CARROLL, CHAS., C.J., and PEARSON, J., concur.