268 So.2d 434 (1972)
HENRY MORRISON FLAGLER MUSEUM, a Florida Corporation, Appellant,
v.
W. Howard LEE, Appellee.
No. 71-547.
District Court of Appeal of Florida, Fourth District.
August 11, 1972.
*435 Kirk Sullivan, West Palm Beach, for appellant.
Frederick H. Hope, Palm Beach, and John R. Beranek of Jones, Paine & Foster, West Palm Beach, for appellee.
MAGER, Judge.
Defendant Flagler Museum appeals a final judgment entered pursuant to a jury verdict awarding plaintiff, W. Howard Lee, compensatory and punitive damages. Essentially, defendant contends that it was error for the trial court to submit the issue of punitive damages to the jury and to permit the jury to hear testimony relating to the plaintiff's mental pain and suffering. Defendant urges this court remand the case for a new trial on both the compensatory and punitive damages issues apparently conceding the issue of liability.
The suit arose as a result of the defendant's termination of plaintiff's services as Executive Director of the Museum in August 1967. There was no written contract as such evidencing the agreement,[1] however the evidence reflects that the plaintiff was to be employed as Executive Director for a period of three years beginning in November 1967. There is also apparently no dispute as to the amount of annual salary to be paid plaintiff. Included in this arrangement was an understanding that plaintiff and his family were to have rent-free use of a residence known as Lotus Cottage.
On or about February 15, 1969, the services of the plaintiff were terminated. Subsequently, in May of 1969, defendant instituted proceedings in the County Court of Palm Beach County to recover possession of Lotus Cottage asserting the plaintiff's refusal to leave the residence after termination of employment. On June 3, 1969, the County Judge entered a final judgment granting possession of Lotus Cottage to defendant and ordered plaintiff to vacate. On the same day a writ of possession was issued by the County Judge and in pursuance of said writ the petitioner was evicted from Lotus Cottage.
As a result of the foregoing, plaintiff filed a complaint against the defendant asserting a breach of the contractual relationship. The complaint contained two counts. Under Count I plaintiff sought compensatory damages resulting from the breach of contract including vacation pay, personal automobile expenses and the rental value of the residence.
Under Count II of the complaint plaintiff additionally sought compensatory and punitive damages for defendant's "willful and malicious acts" resulting from the direct breach of the contract, i.e., evicting the plaintiff and his family from their residence asserting that plaintiff's "personal goods and belongings were openly and notoriously placed on the public streets"; exposing plaintiff to "notorious and detrimental publicity" causing "the Plaintiff and his family severe embarrassment and humiliation ... which has affected the mental and physical health of the Plaintiff".
The instructions given by the trial judge (to which defendant objected) fairly tracked Counts I and II of the complaint. We find no fault with the trial court's instruction with respect to the statement of the law of damages under Count I. This instruction was, in our opinion, consistent with the evidence in the record. The verdict *436 of the jury awarding compensatory damages under Count I is affirmed, in part, as will be hereinafter more fully explained.
With respect to Count II we are off the opinion that it was error to submit the issue of punitive damages to the jury as well as to permit admission into evidence testimony relating to plaintiff's mental pain and suffering resulting from embarrassment and damage to his reputation.[2] It is important to note and separate the presence of two distinct elements contained in Count II as amplified by the trial court's instructions to the jury. The trial court's instructions with respect to Count II proceeded on a dual theory: (1) that if the defendant breached the employment contract the jury could award compensatory damages if the greater weight of the evidence reflected that the defendant had acted with "malice and in a willful and intentional manner to cause the plaintiff to suffer great embarrassment, humiliation, adverse publicity and public ridicule as a direct and proximate result of said breach of contract"; (2) if the defendant "acted with malice, moral turpitude, wantonness and willful or reckless indifference to the rights of others" the jury could assess punitive damages against the defendant as a punishment and a deterrent to others.
In other words, under Count II the jury was to consider the evidence with respect to the award of compensatory damages for the mental anguish suffered as a result of the breach of contract as well as the award of punitive damages if such breach was with malice or with willful and reckless indifference to the rights of the plaintiff.
With respect to that portion of Count II relating to mental pain and suffering and the instructions thereon, the general rule is that recovery for such items is not allowed in actions for a breach of contract; the courts being of the view that mental suffering which accompanies a breach of contract is too remote for compensation. 22 Am.Jur.2d, Damages, § 195. The leading Florida case supporting this proposition is Hazen v. Cobb, 1928, 96 Fla. 151, 117 So. 853, where the court refused to approve an attempt to recover damages for a breach of a special contract of employment where it was alleged that the termination was "to the great damage and humiliation of plaintiff". In this context the Supreme Court of Florida held in Kirksey v. Jernigan, Fla. 1950, 45 So.2d 188, 189:
"This court is committed to the rule, and we re-affirm it herein, that there can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved. Dunahoo v. Bess, 146 Fla. 182, 200 So. 541, following International Ocean Telegraph Company v. Saunders, 32 Fla. 434, 14 So. 148, 21 L.R.A. 810."
The court, however, went on to state:
"But we do not feel constrained to extend this rule to cases founded purely in tort, where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages... ." (Emphasis added.)
See also Levine v. Knowles, Fla.App. 1967, 197 So.2d 329; Slocum v. Food Fair Stores of Florida, Fla. 1958, 100 So.2d 396.
Therefore, where the wrongful act complained of is of such a nature as to constitute a tort mental anguish may be a recoverable item of damage. But where the gravamen of the proceeding is breach of contract, even if such breach be willful and flagrant, there can be no recovery for mental pain and anguish resulting from *437 such breach. Cf. Fontainebleau Hotel Corp. v. Kaplan, Fla.App. 1959, 108 So.2d 503.
The foregoing leads us to a discussion of the second aspect of Count II also reflected in the trial court's instruction, namely, the reference to punitive damages. The general rule and overwhelming weight of authority is that punitive damages are not recoverable for breach of contract irrespective of the motive of the party at fault. 22 Am.Jur.2d, Damages, § 245; 84 A.L.R. 1345; Griffith v. Shamrock Village, Fla. 1957, 94 So.2d 854; Fontainebleau Hotel Corp. v. Kaplan, supra; Maco Supply Corp. v. Masciarelli, Fla.App. 1958, 213 So.2d 265; Winn & Lovett Grocery Co. v. Archer, 1936, 126 Fla. 308, 171 So. 214; Associated Heavy Equipment Schools v. Masiello, Fla.App. 1969, 219 So.2d 465; Korbin v. Berlin, Fla.App. 1965, 177 So.2d 551; Singleton v. Foreman, 5 Cir.1970, 435 F.2d 962; Roger Lee, Inc. v. Trend Mills, Inc., 5 Cir.1969, 410 F.2d 928.
The aforementioned cases, however, do indicate that:
"... [W]here the acts constituting a breach of contract also amount to a cause of action in tort there may be a recovery of exemplary damages upon proper allegations and proof. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort...." Griffith v. Shamrock Village, supra, 94 So.2d at 858.
From our review of the record we are unable to perceive the existence of an independent, willful tort entitling the plaintiff to claim punitive damages. As pointed out by the authorities hereinabove cited, the mental anguish suffered as a result of the breach of the employment contract does not amount to a cause of action in tort; nor does the eviction of the plaintiff from his residence, however embarrassing it may have been, amount to an independent tort upon which punitive damages can be predicated. The record reflects that defendant obtained possession of Lotus Cottage pursuant to a legal proceeding in the Palm Beach County Court (presumably under Chapter 85, Florida Statutes, F.S.A.). Cf. Young v. Cobbs, Fla. 1955, 83 So.2d 417. And although the plaintiff suggests that the action in the Palm Beach County Court involved only "possession" and did not concern the question of a written contract or a breach of the employment contract, nonetheless the procedure followed by the defendant would negative the necessary ingredient of malicious conduct upon which punitive damages must be predicated.
At this juncture it should be observed that there is a marked difference between consequences of a tort committed with and without malice (see Winn & Lovett Grocery Co. v. Archer) so that even if a tort was assumed to have occurred as a result of the eviction nonetheless the presence of wanton and willful conduct in connection with such tort would be essential to a claim for punitive damages.
It is to be noted that the jury returned a verdict in the sum of $26,943.25 for compensatory damages under Count I and $3,056.75 for punitive damages under Count II. It is clear that the amount awarded for punitive damages is in error and should be set aside. Defendant, however, additionally suggests that the amount awarded for compensatory damages is not supported by the evidence; computations would reflect compensatory damages in the amount of $23,629.94. The defendant suggests that the difference between the $23,629.94 and the $26,943.25 reflects the jury's award for the plaintiff's mental pain and anguish. The defendant therefore *438 urges that the entire cause be remanded for a new trial because the jury verdict was influenced by the testimony relating to the plaintiff's mental anguish.
We agree with defendant's contentions in part only. It is undisputed, and the evidence in the record so reflects, the defendant's breach of its employment contract with the plaintiff at least to the extent of $23,629.94. To suggest that the consideration of the evidence relating to mental anguish influenced the jury's determination in arriving at this figure is to disregard defendant's own calculations. Clearly the evidence supports a jury verdict of at least $23,629.94 as compensatory damages under Count I; and although the difference between that figure and the ultimate verdict of $26,943.25 may not be supported by the record and may be said to have been attributed to calculations based upon mental pain and suffering we see no reason why the award cannot be reduced to this $23,629.94 figure. Concededly, the evidence relating to mental anguish was error but not of the type that it can be properly said to have resulted in a miscarriage of justice. Stated otherwise, the admission of evidence relating to mental anguish was, insofar as the verdict relating to Count I, harmless error.
Accordingly, the judgment appealed from is reversed with directions that the verdict for punitive damages be set aside and an order be entered for a remittitur with respect to that part of the award of compensatory damages which exceeds $23,629.94. If the plaintiff shall decline such remittitur then the judgment shall be reversed for a new trial. Main v. Benjamin Foster Co., 1939, 141 Fla. 91, 192 So. 602.
REED, C.J., and OWEN, J., concur.
NOTES
[1] There is however written correspondence in the record to reflect the terms and conditions of employment.
[2] We are of the view that the trial court should have granted defendant's motion for directed verdict as to the claims set out in Count II.