562 So.2d 798 (1990)
FIRST SOUTHERN INSURANCE COMPANY, Appellant,
v.
OCEAN STATE BANK, Appellee.
No. 89-2002.
District Court of Appeal of Florida, First District.
May 29, 1990.
Karen K. Cole of Boyd & Jenerette, P.A., Jacksonville, for appellant.
Kurt Andrew Simpson and W. Thomas Copeland, Jacksonville, for appellee.
ALLEN, Judge.
Ocean State Bank was given a defective security interest in an automobile. The *799 security interest was defective, because the debtor, a thief, had no "rights in the collateral," a requisite to creation of a valid security interest. Nevertheless, the trial court found the bank's claim to the automobile to be superior to that of the automobile owner's subrogee, because the owner was found to be estopped to claim any right to the vehicle as against the bank. While we recognize that the doctrine of estoppel will sometimes apply to excuse the necessity of a showing that the debtor had rights in the collateral, the doctrine does not apply to the facts of this case. Consequently, we reverse.
Neal Wright, an employee of G.T. Leasing, was entrusted with the use of his employer's new Honda automobile. Without authority, Wright secretly removed the automobile's title document from his employer's files and, thereafter, fraudulently induced an automobile dealer to alter the title document to indicate that Wright was the owner of the automobile. Wright then used the altered title document to give Ocean State Bank a security interest in the automobile as security for a personal loan. When the theft was discovered, G.T. Leasing's surety, First Southern Insurance Company, reimbursed G.T. Leasing for the loss and was subrogated to G.T. Leasing's claim to the automobile. When Wright defaulted on the loan, the bank also asserted claim to the automobile. By stipulation of the parties, the automobile was sold. The issue before the trial court was whether the surety or the bank had priority as to the proceeds.
The final declaratory judgment declared the bank to be entitled to the proceeds upon application of the doctrine of estoppel. The trial court reasoned that the owner's subrogee was estopped to assert rights superior to the bank, because the owner had allowed Wright to use the vehicle and had placed him in a position which gave him access to company files.
Section 9-203 of the Uniform Commercial Code, Section 679.203(1), Florida Statutes, provides, in pertinent part, that "a security interest is not enforceable against * * * third parties with respect to the collateral and does not attach unless * * * [t]he debtor has rights in the collateral." Neither the Uniform Commercial Code, nor the Florida version thereof, defines the term "rights in the collateral," but case law has established the general contours of its meaning. For example, it is clear that mere possession of goods does not amount to "rights in the collateral." See, e.g., Morton Booth Co. v. Tiara Furniture, Inc., 564 P.2d 210 (Okla. 1977); Disch v. Raven Transfer & Storage Co., 17 Wash. App. 73, 561 P.2d 1097 (1977); and J. White and R. Summers, Uniform Commercial Code, § 23-4 (2d ed. 1984). However, the debtor may have sufficient "rights" for purposes of § 9-203 if the true owner of the collateral has agreed to the debtor's use of the collateral as security[1] or if the true owner has become estopped to deny the creation or existence of the security interest.[2] Thus, the requirement that there be "rights in the collateral" illustrates the general principle that "one cannot incumber another man's property in the absence of consent, estoppel or some other special rule."[3]First Nat'l Bank and Trust Co. of Augusta v. McElmurray, 120 Ga. App. 134, 138, 169 S.E.2d 720, 724 (1969).
Wright had no ownership interest in the automobile at issue in the present case, and *800 the true owner had not authorized him to use the automobile as security, but the bank contends that the trial court was correct in finding the owner's subrogee to be estopped to claim a right superior to the bank's claim.
The essential elements of estoppel are: (1) a representation by the party estopped to the party claiming the estoppel as to some material fact, which representation is contrary to the condition of affairs later asserted by the estopped party; (2) a reliance upon this representation by the party claiming the estoppel; and 3) a change in the position of the party claiming the estoppel to his detriment, caused by the representation and his reliance thereon. Home Ins. Co. ex. rel. White's Imports, Inc. v. Small, 389 So.2d 1255, 1257 (Fla. 1st DCA 1980); Davis v. Evans, 132 So.2d 476, 481 (Fla. 1st DCA 1961), cert. denied, 136 So.2d 348 (Fla. 1961).
For its contention that the doctrine of estoppel applies to defeat the claim of the surety, the bank relies upon this court's opinion in General Finance Corp. v. East Lake Auto Sales Co., 190 So.2d 399 (Fla. 1st DCA 1966), cert. denied, 201 So.2d 460 (Fla. 1967). In East Lake an automobile wholesaler delivered several automobiles to an automobile dealer, together with appropriately executed title documents. Upon receipt of the automobiles and title documents, the dealer gave a security interest in the automobiles to a finance company. When the dealer subsequently failed to make payment to the wholesaler, the wholesaler was held to be estopped to make any claim to the automobiles as against the finance company.[4]
We find East Lake to be clearly distinguishable from the present case. There, the owner/seller delivered both the vehicle and title documents to the buyer/debtor, with the expectation that the automobiles would be encumbered and then sold. The giving of the security interest was directly facilitated by the indicia of ownership which was knowingly given by the owner/seller. Here, the owner did nothing more than entrust the use of an automobile to an employee. The more significant indicia of ownership, the title document, was not given by the owner; it was stolen.
Where the owner of property knowingly cloaks another with indicia of ownership or authority over the property, the owner will be held to have represented such ownership or authority to third persons. Under such circumstances, the doctrine of estoppel will preclude the owner from complaining where a third party relies upon such representation to his detriment. But the doctrine does not apply where the indicia of ownership is not knowingly given by the true owner, such as where it is secured by theft, forgery or other criminal act.
The facts of this case reveal no misrepresentation by the owner, G.T. Leasing, nor any reliance by the third party, Ocean State Bank, upon any representation made by the owner. Accordingly, we reverse the final declaratory judgment and remand this cause to the trial court for entry of a final declaratory judgment in accordance with this opinion.
WIGGINTON and MINER, JJ., concur.
NOTES
[1] See, e.g., General Motors Acceptance Corp. v. Washington Trust Co. of Westerly, 120 R.I. 197, 386 A.2d 1096 (1978) and K.N.C. Wholesale, Inc. v. AWMCO, Inc., 56 Cal. App.3d 315, 128 Cal. Rptr. 345 (1976).
[2] See e.g., Pubs, Inc. of Champaign v. Bank of Illinois in Champaign, 618 F.2d 432 (7th Cir.1980); Avco Delta Corp. Canada Ltd. v. United States, 459 F.2d 436 (7th Cir.1972); and General Finance Corp. v. East Lake Auto Sales Co., 190 So.2d 399 (Fla. 1st DCA 1966), cert. denied, 201 So.2d 460 (Fla. 1967).
[3] Section 1-103 of the UCC, Section 671.103, Florida Statutes, provides: "Unless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."
[4] First Sec. Bank of Idaho, N.A. v. Woolf, 111 Idaho 680, 726 P.2d 792 (App. 1986) presents a similar factual situation and result.